UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

NORTHEAST COMMUNICATIONS OF
WISCONSIN, INC.,

        Plaintiff,

v.                                          Case No. 05-C-0690

CENTURYTEL, INC., and
ALLTEL, CORP.,

        Defendants.

---

**DECISION AND ORDER**

---

In this diversity contract case, Plaintiff Northeast Communications of Wisconsin, Inc., sued Defendants CenturyTel, Inc., and Alltel Corp. for specific performance of a right of first refusal under the Wisconsin RSA #10 LP Limited Partnership Agreement. In the alternative, Northeast sought damages for breach of the Agreement. CenturyTel and Alltel answered, denying any breach, asserting that Northeast was estopped from arguing to the contrary, and seeking a declaratory judgment that no breach had occurred. The parties have now filed cross-motions for summary judgment. For the following reasons, Northeast's motion will be denied and CenturyTel/Alltel's granted.

**BACKGROUND**

On April 20, 1989, Casco Telephone Company, Inc., Universal Cellular for Wisconsin RSA #10, Inc., Lakefield Communications, Inc., Northeast, and Wayside Telecom, Inc., entered into the

Agreement as limited partners.[1] (PPFOF ¶¶ 1-2.) KDM Cell, Inc., was the general partner. (PPFOF ¶ 2.) Shortly after the limited partnership was formed, CenturyTel purchased the parent company of Universal RSA #10. (PPFOF ¶ 13.)

The Agreement provides that the partnership is to be governed by the laws of the State of Wisconsin. (Compl., Ex. A § 20.11.) Article XI of the Agreement sets forth the terms on which limited partners may transfer their interests in the limited partnership. Section 11.1 gives the other partners a right of first refusal in the event of a "sale, exchange, or other transfer or assignment" of any limited partner's interest to anyone other than an affiliate of that limited partner. (*Id.* § 11.1.) The selling partner must notify the general partner of its intent to sell and offer its interest to the other partners at the price proposed by the non-party purchaser. The general partner then notifies the other limited partners of the proposed sale. The general partner and the limited partners have the right to purchase pro rata shares of the selling partner's partnership interest.

The parties' dispute centers on § 11.5 of the Agreement, which is entitled "Right of Limitation of Transfer and Right of First Refusal as Among Casco Telephone Company, Universal Cellular for Wisconsin RSA #10, Inc. and Lakefield Communications, Inc." The section reads as follows:

> Any provision of Section 11.1 to the contrary notwithstanding, it is understood and agreed that CASCO TELEPHONE COMPANY, UNIVERSAL CELLULAR FOR WISCONSIN RSA #10, INC. and LAKEFIELD COMMUNICATIONS, INC. may transfer their respective partnership interest to one of their respective affiliates at any time without consent or restriction from any other partner. In the event of any sale, transfer, or other disposition of ownership or control by CASCO TELEPHONE

---

[1] The purpose of the limited partnership was to provide cellular telephone service to Door, Kewaunee, and Manitowoc Counties.

> COMPANY, UNIVERSAL CELLULAR FOR WISCONSIN RSA #10, INC. or LAKEFIELD COMMUNICATIONS, INC. of their respective Partnership Interest, the non-selling entity, or affiliate of the non-selling entity, shall have, to the exclusion of all other partners, exclusive right for a period of thirty (30) days from the date of receiving notice from the selling partner of its interest to sell part or all Partnership Interest, the right to purchase the interest of the selling partner or a portion of said interest. The price that such partner shall pay for the selling partner's interest shall be equal to the price offered by any third party desiring to purchase the interest of the selling partner or 100% of the fair market value of such interest, whichever is the lesser of the two figures. If the buying or selling partners cannot agree as to a fair market value for the Partnership Interest being sold, the fair market value shall be determined to be equal to the average value arrived at by three (3) independent appraisers, one chosen by the selling partner, one chosen by the purchasing partner or partners, and the third chosen by the other two appraisers selected by the partners. In determining the fair market value of the Partnership Interest being sold, the appraisers shall make such determination independent of and not considering the third party offer which may have necessitated the appraisals. All appraisers shall be chosen within thirty (30) days of the date of the event necessitating an appraisal and such said appraisers are to have their appraisal presented within thirty (30) days of their selection as appraisers. Any interest not so purchased by CASCO TELEPHONE COMPANY, UNIVERSAL CELLULAR FOR WISCONSIN RSA #10, INC. or LAKEFIELD COMMUNICATIONS, INC., or their respective affiliates, from the other or others at the termination of the 30-day period, shall be subject to purchase by any of the other partners. It is the intention of the parties that this paragraph shall apply only to sales by CASCO TELEPHONE COMPANY, UNIVERSAL CELLULAR FOR WISCONSIN RSA #10, INC., or LAKEFIELD COMMUNICATIONS, INC., or their affiliates to each other, or their affiliates, so as to give each of these entities the first right and option to purchase additional interests in the Partnership.

Section 11.3 of the Agreement contains substantially similar provisions governing sales, transfers, or other dispositions of ownership or control by Northeast and Wayside.

Several years after the execution of the Agreement, following extensive litigation, Northeast acquired all of Wayside's partnership interest and Lakefield and Universal RSA #10 each acquired half of Casco's partnership interest. Thus, Northeast, Lakefield, and Universal RSA #10 are the only remaining limited partners at this juncture. In 2002, CenturyTel sold CenturyTel Wireless,

3

Inc., an upstream parent of Universal RSA #10, to Alltel.[2] Northeast claims that this sale gave it a right to purchase Universal RSA #10's partnership interest.

CenturyTel and Alltel deny that any such right exists under the terms of the Agreement. They also argue that Northeast should be judicially estopped from arguing otherwise by virtue of the interpretation of § 11.5 it advanced in the previous litigation over the Agreement. Sections 11.3 and 11.5 of the Agreement were the subject of extensive litigation between Northeast, Wayside, Casco and Lakefield in the early 1990's in state court when Pacific Telecom, Inc. ("Pacific") merged with Wayside's parent and, in a separate transaction, acquired Casco. Two separate lawsuits were commenced in Brown County Circuit Court before then Judge Crooks as Northeast and Lakefield both sought to assert their rights of first refusal under §§ 11.3 and 11.5, respectively. In the lawsuit Northeast commenced against Wayside (the "Wayside litigation"), the issue was whether Pacific's merger with Wayside's parent triggered Northeast's right of first refusal under § 11.3. In support of its argument that the merger did not trigger such a right, Wayside noted that Northeast had not asserted a right of first refusal when Centurytel, Inc., had become Universal's parent in a similar transaction several years earlier. Wayside argued that Northeast's failure to assert such a right in response to the earlier transaction supported its contention that a stock sale did not trigger the right of first refusal under § 11.3 of the Agreement. In response, Northeast argued that it had no such right under § 11.5, since the right of first refusal set forth in that section applied only to Lakeside,

---

[2]Universal Cellular for Wisconsin RSA #10 was a wholly-owned subsidiary of Universal Cellular, Inc., which was a wholly-owned subsidiary of CenturyTel Wireless of Louisiana, Inc., which was a wholly-owned subsidiary of CenturyTel Wireless, Inc., which was a wholly-owned subsidiary of CenturyTel. (PPFOF ¶¶ 27-28.) Thus, CenturyTel was, and Alltel is, a great-great-grandparent company of Universal Cellular for Wisconsin RSA #10, the limited partner whose interest is at issue in this case.

Casco and Universal. Defendants contend that Northeast is estopped from taking a contrary position now.

## ANALYSIS

Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Wantz v. Experian Information Sys.*, 386 F.3d 829, 832 (7th Cir. 2004); Fed. R. Civ. P. 56. Summary judgment can be particularly appropriate in contract actions where the disposition of the case involves the interpretation of a contract. *Tingstol Co. v. Rainbow Sales Inc.*, 218 F.3d 770, 771-72 (7th Cir. 2000). Under Wisconsin law, which the Agreement states is to govern, the construction of a contract is a question of law. *Elkhart Lake's Road Amer. v. Chicago Hist. Races*, 158 F.3d 970, 972 (7th Cir. 1998). Where the terms of a contract are clear and unambiguous, the court must interpret it according to its literal terms. *Gorton v. Hostak, Henzl & Bichler, S.C.*, 577 N.W.2d 617, 622-23 (Wis. 1998). But when the terms of the contract are reasonably susceptible to more than one construction, the contract is ambiguous and the court attempts to ascertain the intent of the parties. *Id.* Yet, even when a term or provision is ambiguous, the issue presented is still one of law, unless the ambiguity must be resolved by considering facts that are extrinsic to the contract itself and the evidence relating to those facts is in dispute. *Walgreen Co. v. Sara Creek Property Co.*, 775 F. Supp. 1192, 1195 (E.D. Wis. 1991), *aff'd*, 966 F.2d 273 (7th Cir. 1992). When that is not the case, however, and when what actually occurred is not in dispute and the only question to be decided is what rights the contract affords the parties in light of those facts, there is no need for a trial. As one

5

can surmise from the fact that both parties to the contract here have filed motions for summary judgment, this is such a case.

"In the event of any sale, transfer, or other disposition of ownership or control by" Universal or Lakefield, § 11.5 of the Agreement allots to the other the right to purchase the partnership interest of the selling entity, exclusive of the rights of Northeast. Section 11.5 goes on to make any partnership interest not purchased by Universal or Lakefield "subject to purchase by" Northeast. Northeast claims that this gives it the right to purchase Universal's partnership interest in the event of a disposition of ownership or control of Universal, if Lakefield does not first purchase that interest. CenturyTel and Alltel counter that § 11.5 does not create a "right of second refusal" for Northeast. They maintain that the language in § 11.5 making any partnership interest not purchased by Lakefield subject to purchase by Northeast merely adumbrates Northeast's rights under § 11.1 of the Agreement. Because § 11.1 applies only to a "sale, exchange, or other transfer or assignment"of Universal's partnership interest, and not to a "disposition of ownership or control" of Universal itself, CenturyTel and Alltel contend that Northeast had no right to purchase Universal's partnership interest after the 2002 sale.

The court agrees. Section 11.5 makes clear by its text, as well as by its title, that it "appl[ies] only to sales by CASCO TELEPHONE COMPANY, UNIVERSAL CELLULAR FOR WISCONSIN RSA #10, INC., or LAKEFIELD COMMUNICATIONS, INC., or their affiliates to each other, or their affiliates." It is impossible to square this language with Northeast's argument that § 11.5 gives Northeast a right, independent of § 11.1, to purchase Universal's partnership interest. Moreover, as CenturyTel and Alltel point out, Northeast's interpretation of § 11.5 would render § 11.1 surplusage, since § 11.5 applies to a broader assortment of transactions–"other
6

disposition[s] of ownership or control" as well as sales and transfers–and potentially allows purchasing partners to obtain a selling partner's interest at a lower price (through its appraisal provision). The court will not adopt a construction of the Agreement that would render § 11.1 surplusage. *See Koenigs v. Jos. Schlitz Brewing Co.*, 377 N.W.2d 593, 602 (Wis. 1985). Since Northeast has no right of first refusal under § 11.5 of the Agreement, and does not contend that a right under § 11.1 arose after the 2002 sale, it cannot prevail in this case. And since the court has concluded that Northeast has no right of first refusal based on the plain language of the Agreement, it need not decide whether Northeast is judicially estopped from asserting such a right.

## CONCLUSION

For the foregoing reasons, the court concludes that CenturyTel and Alltel are entitled to summary judgment on Northeast's claims. CenturyTel and Alltel are also entitled to a declaration that CenturyTel's 2002 sale of CenturyTel Wireless, Inc., to Alltel did not trigger any right of first refusal vested in Northeast by the Agreement. Accordingly, plaintiff's motion for summary judgment is **DENIED**, defendants' motion for summary judgment is **GRANTED,** and this case is **DISMISSED**.

**SO ORDERED.**

Dated this   8th   day of June, 2006.

s/ William C. Griesbach<br>
William C. Griesbach<br>
United States District Judge